UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TYRONE OLDYN,                                    :

                Petitioner,        :        14 Civ. 0307, 10 Cr. 94 (JSR) (AJP)

       -against-                    :        **REPORT AND RECOMMENDATION**

UNITED STATES OF AMERICA,                 :

               Respondent.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Jed S. Rakoff, United States District Judge:**

       Pursuant to 28 U.S.C. § 2255, pro se petitioner Tyrone Oldyn seeks to vacate his 130-month sentence for conspiracy to distribute crack cocaine.  (Dkt. No. 1: Pet.)[1/]  Oldyn alleges that his trial counsel was ineffective during (1) plea proceedings and (2) sentencing proceedings for failing to request that the Court apply the Fair Sentencing Act of 2010 ("FSA").  (Dkt. No. 2: Oldyn § 2255 Br. at 6-9, 12-20; see also Pet. ¶¶ 12(1)-(2).)

       For the reasons set forth below, Oldyn's petition should be DENIED.

## FACTS

**The Indictment**

       On February 11, 2010, Oldyn was indicted and charged with one count of conspiring to distribute and possess with the intent to distribute fifty grams and more of crack cocaine from 2002 to 2010.  (10 Cr. 94, Dkt. No. 22: S4 Superseding Indict. ¶¶ 1-3), and one count of using,

---

[1/]    References to "Dkt. No." are to the docket entries in 14 Civ. 307.  References to docket entries in Oldyn's criminal case are indicated as "10 Cr. 94, Dkt. No. __."

carrying, or possessing firearms which were discharged in furtherance of the conspiracy (S4 Superseding Indict. ¶ 5).

**The Plea Agreement**

   On July 30, 2010, Oldyn entered into a written plea agreement with the Government. (Ex. 2: Plea Agmt.)[2]  Oldyn admitted that he conspired to distribute and possess with intent to distribute at least 500 grams but less than 1.5 kilograms of cocaine base, i.e., crack.  (Plea Agmt. at 1-2.)  The Government agreed not to file a prior felony information related to Oldyn's prior felony drug convictions, and to dismiss at the time of sentencing the firearms charges.  (Plea Agmt. at 1.)

   The parties stipulated to the following: (1) because Oldyn had conspired to distribute between 500 grams and 1.5 kilograms of cocaine, Oldyn's base offense level was 34 under the U.S. Sentencing Guidelines ("U.S.S.G.") (Plea Agmt. at 2); (2) Oldyn was subject to a two-level increase because he possessed and discharged a firearm during the conspiracy (Plea Agmt. at 2); (3) Oldyn was entitled to a two-level reduction for acceptance of responsibility, and a one-level reduction because Oldyn gave timely notice of his intention to enter a guilty plea (Plea Agmt. at 2); and (4) Oldyn had five criminal history points, placing him within Criminal History Category III (Plea Agmt. at 3-4).  Accordingly, the parties agreed that Oldyn's total offense level was 33, his criminal history category was III, and that this combination yielded a Guidelines sentencing range of 168 to 210 months' imprisonment with a mandatory minimum sentence of 120 months' imprisonment. (Plea Agmt. at 4.)

---

[2]  References to "Exs." are to the exhibits attached to the Government's opposition brief, Dkt. No. 9.

As part of the plea agreement, Oldyn also agreed that he would:

not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 168 to 210 months' imprisonment . . . .

(Plea Agmt. at 5.)

**The Guilty Plea Hearing**

At the August 5, 2010 plea hearing before Judge Rakoff, Oldyn's counsel indicated that Oldyn wished to plead guilty to Count One of the S4 superseding indictment. (10 Cr. 94, Dkt. No. 79: Plea Tr. at 2.) Judge Rakoff asked Oldyn whether he was satisfied with the representation by his counsel, Joyce London, and Oldyn replied that he was. (Plea Tr. at 5.) Oldyn also responded that he had a full opportunity to discuss the matter with his counsel. (Plea Tr. at 5.) Judge Rakoff advised Oldyn of certain rights that he was giving up and certain consequences of pleading guilty. (Plea Tr. at 5-7.)[3/] Judge Rakoff also discussed the appeal waiver with Oldyn:

> THE COURT: . . . [U]nder your agreement with the government, you have agreed that if I do sentence you to 210 months or less you will not appeal or otherwise attack your sentence. Do you understand that?
>
> [OLDYN]: Yes.

(Plea. Tr. at 10-11.)

---

[3/]   Judge Rakoff also advised Oldyn that the mandatory minimum sentence was ten years imprisonment and five years supervised release. (Plea Tr. at 7-8.) Judge Rakoff confirmed that Oldyn understood that his sentence would be determined solely by the District Court, that Judge Rakoff was not bound by the Government's estimates regarding Oldyn's sentencing exposure, and that Oldyn was bound by whatever sentence Judge Rakoff imposed. (Plea Tr. at 7-10.)

Oldyn allocuted that he agreed with others to sell and did sell more than 50 grams of crack cocaine.  (Plea Tr. at 12.)  Judge Rakoff accepted Oldyn's guilty plea, finding that Oldyn entered his guilty plea knowingly and voluntarily with sufficient supportive facts.  (Plea Tr. at 12-13.)

**Sentencing-Related Proceedings**

On November 15, 2010, Oldyn's counsel, Joyce London, moved to join co-defendant Patterson's sentencing argument that the FSA applied retroactively.  (10 Cr. 94, Dkt. No. 98: Oldyn Joinder Motion; 10 Cr. 94, Dkt. No. 91: Patterson Sentencing Br.)  Were the Court to retroactively apply the FSA, the 50 grams to which the defendants allocuted would fall below the now 280 gram threshold for a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(iii).  (See Patterson Sentencing Br. at 1 n.1).  The 50 grams would trigger only the five-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(iii).  Compare 21 U.S.C. § 841(b)(1)(A)(iii) (2009) (50 grams crack cocaine triggers ten-year mandatory minimum), with 21 U.S.C. § 841(b)(1)(A)-(B) (effective Aug. 3, 2010) (50 grams crack cocaine triggers five-year mandatory minimum.)  (See also Patterson Sentencing Br. at 1 n.1.)

On December 30, 2010, Judge Rakoff issued an opinion rejecting the defendants' argument about the FSA.  United States v. Patterson, 10 Cr. 94, 2010 WL 5480838 (S.D.N.Y. Dec. 30, 2010).  Relying on the Savings Statute, 1 U.S.C. § 109, Judge Rakoff held that:

> [A] criminal defendant is subject to the statutory "penalty, forfeiture, or liability" in place at the time he commits the offense -- and therefore does not benefit from a subsequently-enacted reduction -- "unless the repealing Act . . . expressly provide[s]" otherwise. . . .
>
> Here, it is manifest that no language of the FSA expressly mandates that its provisions apply retroactively. . . .
>
> . . . .

> Nor, frankly, do the defendants here have any cause to complain. The defendants in this action engaged in criminal acts while those acts were subject to a mandatory minimum sentence of ten years, and, as noted, they pled guilty to those crimes on the express understanding that the Court was bound by statutory mandate to impose, at minimum, a ten year sentence for the crimes to which they had now confessed. . . .

> Accordingly, for the foregoing reasons, the Court concludes that the FSA's reduced statutory minimums do not apply in the instant cases and that the defendants here remain subject to the ten-year mandatory minimum.

United States v. Patterson, 2010 WL 5480838 at *1-4.

On February 15, 2011, Oldyn's counsel submitted a sentencing memorandum arguing that Oldyn's base offense level should be reduced to 32 because the possessed quantity of crack cocaine range stipulated to in the plea agreement, 500 grams to 1.5 kilograms, straddled the new quantity ranges affected by the FSA. (10 Cr. 94, Dkt. No. 122: Oldyn Sentencing Br. at 3.) Oldyn's counsel also argued for a non-Guidelines sentence of 120 months. (Oldyn Sentencing Br. at 9.)

**The March 9, 2011 Sentencing Hearing**

On March 9, 2011, Judge Rakoff held a sentencing hearing. (10 Cr. 94, Dkt. No. 130: 3/9/11 Sentencing Hearing ("S.").)

At the outset, Oldyn's counsel presented the Court with a letter written by Oldyn withdrawing his request for a Fatico hearing as to his base offense level calculation. (S. 2-5.) Oldyn's counsel had explained to him that under theories of co-conspirator liability and reasonable foreseeability, the Government would be able to prove that Oldyn and his co-defendants distributed more than 840 grams of crack cocaine, the requisite amount for a 34 base offense level. (S. 3.)

Oldyn's counsel argued that Oldyn was not subject to a two-point enhancement for committing the instant offense while on probation because the probation stemmed from the same illegal activity. (S. 5-10.) Judge Rakoff rejected this argument, finding that because Oldyn had "all

the warnings and all the benefits that go along with" a prior probationary term, his violative conduct while on probation was of "a more serious manner deserving of potentially greater punishment." (S. 7-9.)  Judge Rakoff accepted the findings of the presentence report that Oldyn's total offense level was 33, criminal history category was III, and guidelines range was 168 to 210 months, but stated that these mean "very little if anything in the calculation of the sentence itself" given his consideration of the 18 U.S.C. § 3553(a) factors.  (S. 10.)

Judge Rakoff imposed a non-Guidelines sentence of 130 months' imprisonment, a term "very considerably below the 168 to 210 months recommended by the guidelines."  (S. 24.)  Judge Rakoff noted that Oldyn's "criminal history is more extensive" than that of co-defendants Maurice Patterson and Jamar Miller, both of whom received sentences of 120 months' imprisonment.  (S. 18, 24.)  The "extra 10 months reflect the court's view of the difference between [Oldyn] and [Patterson and Miller], in terms of criminal history in particular, after giving considerable weight on the mitigation side to the time [Oldyn] has already served in state custody on related offenses."  (S. 24.)   Judge Rakoff granted the Government's motion to dismiss the remaining charges (i.e., the firearm count) against Oldyn.  (S. 26.)  Finally, Judge Rakoff discussed Oldyn's appeal rights:

| | |
|---|---|
| THE COURT: | Was there a waiver of appeal in this case? |
| [A.U.S.A.] POSCABLO: | There was. |
| THE COURT: | Mr. Oldyn, you have agreed as part of your plea not to appeal the sentence if it was a guidelines sentence or below as it is. . . . Do you understand that? |
| [OLDYN]: | Yes, sir. |

(S. 26-27.)  Judgment was entered on March 14, 2011.  (10 Cr. 94, Dkt. No. 126: Judgment.)

**Oldyn's Direct Appeal**

Still represented by counsel Joyce London, Oldyn timely filed a notice of appeal on March 18, 2011.  (10 Cr. 94, Dkt. No. 127.)  Oldyn's appeal requested that the Second Circuit vacate his judgment and remand the case for resentencing in accordance with the terms of the FSA.  (See Dkt. No. 9: Gov't Opp. Br. at 3.)  The Government moved to dismiss on the basis of Oldyn's appeal waiver.  (Gov't Opp. Br. at 3.)  Attorney London submitted an affirmation opposing the Government's motion, arguing that the "waiver was based on misinformation by both the government and the district court judge as to the sentencing laws applicable to the crime to which [Oldyn] was pleading guilty," because the "FSA went into effect prior to the date on which appellant Oldyn entered into his plea agreement."  (Ex. 10: London Aff. at 2, 6.)  On January 22, 2013, the Second Circuit granted the Government's motion, finding Oldyn's appeal barred by his waiver.  (10 Cr. 94, Dkt. No. 154: 2d Cir. Order of Dismissal.)

**Oldyn's 28 U.S.C. § 2255 Motion**

On January 14, 2014, Oldyn filed a pro se petition pursuant to 28 U.S.C. § 2255 to vacate his sentence.  (Dkt. No. 1: Pet.)  Oldyn's § 2255 motion asserts that his counsel, Joyce London, was ineffective: (1) during the plea proceedings for failing "to inform [Oldyn], or the court of the fact that [Oldyn] no longer faced a mandatory minimum of ten years imprisonment"; and (2) during the sentencing proceedings for failing to "investigate the applicable law."  (Dkt. No. 2: Oldyn § 2255 Br. at 7, 9; see also Pet. ¶¶ 12(1)-(2); Dkt. No. 12: Oldyn § 2255 Reply Br. at 1-7.)  Oldyn argues that on these bases his plea was entered into "'unknowingly and unintelligently.'"  (Oldyn § 2255 Br. at 9.)

## ANALYSIS

### I.   LEGAL STANDARDS

#### A.   28 U.S.C. § 2255 Motions

To prevail on a motion pursuant to 28 U.S.C. § 2255, a prisoner must demonstrate that either "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "Because the Sixth Amendment provides criminal defendants with the right to effective assistance of counsel, inadequate representation is a basis for relief under section 2255."  Morales v. United States, 635 F.3d 39, 43 (2d Cir.), cert. denied, 132 S. Ct. 562 (2011) (citations omitted).

#### B.   The Fair Sentencing Act of 2010

On August 3, 2010, President Obama signed into law the Fair Sentencing Act of 2010 ("FSA").  (See Dkt. No. 9: Gov't Opp. Br. at 7.)  The FSA, inter alia, "reduced the disparity between the amount of crack cocaine and powder cocaine needed to trigger certain federal criminal penalties from a 100:1 weight ratio to an 18:1 weight ratio."  United States v. Bailey, 10 Cr. 391, 12 Civ. 3648, 11 Civ. 7101, 2013 WL 1828669 at *1 (S.D.N.Y. Apr. 29, 2013).  Specifically, the FSA raised the amount of crack cocaine required to support a ten-year mandatory minimum sentence from 50 grams to 280 grams.  21 U.S.C. § 841(b)(1)(A)(iii).  On November 1, 2010, the United States Sentencing Commission issued emergency amendments to the U.S.S.G., increasing the required quantity of crack cocaine for a base offense level of 32 to between 280 and 840 grams, and for a base offense level of 34 to between 840 grams and 2.8 kilograms.  See U.S.S.G. § 2D1.1(c).

In United States v. Acoff, 634 F.3d 200 (2d Cir.) (per curiam), cert. denied, 131 S. Ct. 3007 (2011), the Second Circuit held that the savings statute forecloses the retroactive

application of the FSA's more lenient penalty provisions.  See id., 634 F.3d at 202; see also id. at 204-05 (Lynch, C.J., concurring) ("[T]hrough the combination of the savings statute, and the provisions of the Fair Sentencing Act of 2010, which fails to provide for any retroactive application of its reform of the sentences for crack cocaine offenses, Congress has commanded that offenders who committed such offenses before the effective date of the FSA but are to be sentenced after that date must be sentenced under the harsh terms of the prior law . . . ." (emphasis added & citations omitted)).  Indeed, the Second Circuit found it consistent with the Constitution that "in the absence of a clear statement of retroactivity," it "is the normal—and normally appropriate—procedure" to apply the law in effect at the time the conduct occurred.  See id. at 203 (Calabresi, C.J., concurring). This is so because "[i]t is not irrational for Congress to impose a penalty on those who committed their offenses at a time when they knew or should have known the severity of the applicable penalty, even while reducing the penalty as to future offenders."  Id. at 202 (per curiam).[4]

    The Supreme Court in Dorsey v. United States, 132 S. Ct. 2321(2012), addressed the retroactive application of the FSA to defendants who, prior to the FSA's passage, committed crack-

---

[4]    The Sixth and Eleventh Circuits agreed with the Second Circuit.  See United States v. Gomes, 621 F.3d 1343, 1346 (11th Cir. 2010) (per curiam) ("[B]ecause the FSA took effect in August 2010, after appellant committed his crimes, 1 U.S.C. § 109 bars the Act from affecting his punishment."), cert. denied, 131 S. Ct. 1833 (2011), abrogated on other grounds by Dorsey v. United States, 132 S. Ct. 2321 (2012); United States v. Carradine, 621 F.3d 575, 580 (6th Cir. 2010) ("The new law at issue here, the [FSA], contains no express statement that it is retroactive nor can we infer any such express intent from its plain language.   Consequently, we must apply the penalty provision in place at the time [defendant] committed the crime in question."), cert. denied, 131 S. Ct. 1706 (2011), abrogated on other grounds by Dorsey v. United States, 132 S. Ct. 2321 (2012).  Two other Circuits reached a conflicting result.  See United States v. Dixon, 648 F.3d 195, 203 (3d Cir. 2011) ("We hold that the FSA requires application of the new mandatory minimum sentencing provisions to all defendants sentenced on or after August 3, 2010, regardless of when the offense conduct occurred."); United States v. Douglas, 644 F.3d 39, 42-44 (1st Cir. 2011).

related crimes subject to the pre-FSA mandatory minimums, but who were not sentenced until after the FSA became law.  In Dorsey, the Supreme Court concluded that the FSA's changes to the threshold quantities of crack cocaine necessary to trigger the mandatory minimum sentences applied to such defendants because, inter alia, "[t]he Sentencing Commission has . . . instructed sentencing judges to 'use the Guidelines Manual in effect on the date that the defendant is sentenced,' regardless of when the defendant committed the offense, unless doing so 'would violate the ex post facto clause.'"  Id. at 2332 (quoting U.S.S.G. § 1B1.11).  Thus, after Dorsey, "the Fair Sentencing Act's new, lower mandatory minimums . . . apply to the post-Act sentencing of pre-Act offenders."  Id. at 2335.

The Second Circuit in United States v. Harrison, 699 F.3d 158 (2d Cir. 2012) (per curiam), cert. denied, 133 S. Ct. 914 (2013), clarified that "the change in law caused by Dorsey's interpretation of the Fair Sentencing Act is not sufficient to upset a valid waiver of appeal."  699 F.3d at 159.[5/]  Where an appeal waiver was entered into knowingly and voluntarily, "'[a] defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce [that] appeal waiver."'"  United States v. Harrison, 699 F.3d at 159 (quoting United States v. Riggi, 649 F.3d 143, 150 n.7 (2d Cir. 2011)).

### C.   **Appeal Waivers**

The Second Circuit has held that "[w]here the record clearly demonstrates that the defendant's waiver of [his] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable."  United States v. Monzon, 359 F. 3d 110, 116

---

[5/]   See also United States v. Stephens, 501 F. App'x 117, 119 (3d Cir. 2012); United States v. Thomas, No. 12-30068, 481 F. App'x 238 (table), 2012 WL 4378736 at *1 (5th Cir. Sept. 26, 2012) (per curiam).

(2d Cir. 2004).[6]  In addition, the Second Circuit has held that "[t]here is no general bar to a waiver of collateral attack rights in a plea agreement."  Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002) (citing Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001) (§ 2255 waiver, like direct appeal waiver, applies to claims arising before the waiver and also after the waiver at sentencing)), cert. denied, 537 U.S. 1146, 123 S. Ct. 946 (2003).[7]

Determining that plea agreement waivers of appeal/2255 rights are generally enforceable, however, does not end the inquiry.  The Second Circuit has held that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement."  Frederick v. Warden, 308 F.3d at 195.  An appeal or collateral attack waiver is unenforceable only if the defendant has a "meritorious"

---

[6]    Accord, e.g., United States v. Pearson, 570 F.3d 480, 485 (2d Cir. 2009) (per curiam) ("'In no circumstance . . . may a defendant, who has . . . knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.'" (quoting United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.) (per curiam), cert. denied, 509 U.S. 931, 113 S. Ct. 3060 (1993))); United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998) ("It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable."); Rios v. United States, 13 Civ. 7831, 11 Cr. 568, 2014 WL 2751027 at *2 (S.D.N.Y. June 17, 2014); Moore v. United States, 00 Civ. 4560, 98 Cr. 833, 2001 WL 253432 at *9 (S.D.N.Y. Mar. 15, 2001) (Peck, M.J.) (citing cases).

[7]    Accord, e.g., Page v. Burge, 331 F. App'x 883, 884 (2d Cir. 2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1298 (2010); Tremblay v. United States, 08 Civ. 7030, 05 Cr. 0783, 2009 WL 1055007 *8 (S.D.N.Y. Apr. 20, 2009); Okupe v. United States, No. 08 CV 693, 2009 WL 455289 at *2 (E.D.N.Y. Feb. 23, 2009) ("Petitioner's challenge to his sentence is foreclosed by his knowing and voluntary waiver of his right to appeal or otherwise challenge a sentence at or below [the stipulated range] as part of his plea agreement."); Antonucci v. United States, 08 Civ. 529, 04 Cr. 828, 2009 WL 185996 at *3 (S.D.N.Y. Jan. 26, 2009); Castellanos v. United States, 06 Civ. 7773, 02 Cr. 1314, 2008 WL 4548916 at *3 (S.D.N.Y. Oct. 8, 2008); Wall v. United States, No. 06-CR-400, 2008 WL 3049948 at *1 (N.D.N.Y. Aug. 1, 2008); Isaza v. United States, 04 Civ. 6096, 00 Cr. 979, 2008 WL 1849170 at *3 (S.D.N.Y. Apr. 24, 2008); Garcia v. United States, 01 Cr. 945, 04 Civ. 6020, 2008 WL 683661 at *3 (S.D.N.Y. Mar. 14, 2008), report & rec. adopted, 2008 WL 2446840 (S.D.N.Y. June 17, 2008).

claim that "the waiver was the result of ineffective assistance of counsel." United States v. Monzon, 359 F. 3d at 118-19.[8/]

"[W]ith respect to claims of ineffective assistance of counsel that are limited to post-plea events (e.g., sentencing), however, the waiver remains enforceable." Marulanda v. United States, 2009 WL 1546315 at *2; accord, e.g., Page v. Burge, 331 F. App'x at 884; Garcia-Santos v. United States, 273 F.3d at 508-09; Concepcion-Baez v. United States, 2009 WL 765045 at *1 ("[A] valid waiver will be upheld against a challenge to the correctness of a sentence."); Okupe v. United States, 2009 WL 455289 at *2; Castellanos v. United States, 2008 WL 4548916 at *3, 5; Wall v. United States, 2008 WL 3049948 at *1 ("'[C]laims of ineffective representation concerning sentencing generally do not survive the § 2255 waiver because . . . [they] relate[] only to the performance of defendant's attorney with respect to sentencing and [do] not go to the validity of the plea agreement itself.'") (citation omitted & alterations in original); Chen v. United States, 06 Civ. 7159, 02 Cr. 1039, 2007 WL 4358466 at *4 (S.D.N.Y. Dec. 7, 2007).

---

[8/]    Accord, e.g., Tellado v. United States, 745 F.3d 48, 53 (2d Cir. 2014), petition for cert. filed, --- U.S.L.W. ---- (U.S. June 6, 2014) (No. 13-10497); Deloir v. United States, 07 Civ. 10633, 06 Cr. 576, 2009 WL 1883263 at *2 (S.D.N.Y. June 30, 2009); Marulanda v. United States, No. 07 CV 5301, 2009 WL 1546315 at *2 (E.D.N.Y. June 2, 2009); Giraldo-Perez v. United States, 08 Civ. 7529, 2009 WL 1492222 at *2 (S.D.N.Y. May 18, 2009); Reyes v. United States, 05 Civ. 3924, 2009 WL 928284 at *2 (S.D.N.Y. Mar. 27, 2009) ("A defendant's waiver of his right to bring a petition pursuant to Section 2255 is unenforceable where defendant was denied effective assistance of counsel in connection with the negotiation and execution of the agreement containing the waiver."); Concepcion-Baez v. United States, No. 02 CV 5287, 2009 WL 765045 at *1 (E.D.N.Y. Mar. 23, 2009); Antonucci v. United States, 2009 WL 185996 at *3; Fuller v. United States, No. 08-CV-3950, 2008 WL 4614998 at *1 (E.D.N.Y. Oct. 15, 2008); Kang v. United States, No. 08 cv 1952, 2008 WL 4283342 at *4 (E.D.N.Y. Sept. 17, 2008); Caminero v. United States, 99 Civ. 9093, 97 Cr. 123, 2008 WL 3833787 at *3 (S.D.N.Y. Aug. 15, 2008); Wall v. United States, 2008 WL 3049948 at *1; Polito v. United States, No. 06 CV 4782, 2007 WL 2815694 at *3 (E.D.N.Y. Sept. 25, 2007).

**D.**    **The Strickland v. Washington Standard on Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687, 104 S. Ct. at 2064.[9]  This performance is to be judged by an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at 2064.[10]  The "'purpose of the effective assistance guarantee of the Sixth Amendment is . . . simply to ensure that criminal defendants receive a fair trial.'  Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'"  Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland v. Washington, 466 U.S. at 686, 689, 104 S. Ct. at 2063, 2065) (citation omitted).

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

---

[9]    Accord, e.g., Harrington v. Richter, 131 S. Ct. 770, 787 (2011); Premo v. Moore, 131 S. Ct. 733, 739 (2011); Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); Bell v. Miller, 500 F.3d 149, 156-57 (2d Cir. 2007); Henry v. Poole, 409 F.3d 48, 62-63 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

[10]    Accord, e.g., Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 521, 123 S. Ct. at 2535; Bell v. Cone, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); Henry v. Poole, 409 F.3d at 63.

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[11/]  Ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' . . . . Decisions by criminal defense counsel are often choices among bad alternatives . . . ." Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 788 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'").  Petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment." Harrington v. Richter, 131 S. Ct. at 787 (quotations omitted).

Second, the defendant must show prejudice from counsel's performance. Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403.  The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Strickland v. Washington, 466 U.S. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.[12/]

---

[11/]   Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 787-88; Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Bierenbaum v. Graham, 607 F.3d 36, 50-51 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Bell v. Miller, 500 F.3d at 156-57; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

[12/]   See also, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.),
(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules."  Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at  2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter 131 S. Ct. at 788; see also, e.g., Cullen v. Pinholster, 131 S. Ct. at

---

12/      (...continued)
cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bierenbaum v. Graham, 607 F.3d at 51.  The phrase "reasonable probability," despite its language, should not be confused with "'more likely than not.'"  Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); accord, e.g., Harrington v. Richter, 131 S. Ct. at 792; Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland."); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

1403 ("The [Supreme] Court acknowledged that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'").

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.[13]

In addition, the Supreme Court has counseled that:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[14]

---

[13] Accord, e.g., Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000); Santone v. Fischer, 689 F.3d 138, 154 (2d Cir.) (ineffective assistance "'claim[s] must be rejected if the defendant fails to meet either the performance prong or the prejudice prong'"), cert. denied, 133 S. Ct. 390 (2012).

[14] See also, e.g., Harrington v. Richter, 131 S. Ct. at 789-90 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Moreover, an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim'
(continued...)

"The <u>Strickland</u> standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d at 199; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance."); <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 50-51; <u>Bell</u> v. <u>Miller</u>, 500 F.3d at 156-57.  "'Surmounting <u>Strickland</u>'s high bar is never an easy task.'"  <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 788 ("[T]he <u>Strickland</u> standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one.").

The <u>Strickland</u> standard also applies to ineffective assistance claims arising out of a guilty plea.  <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985).[15/]  "In the context of a guilty plea, the prejudice requirement 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>Moore</u> v. <u>United States</u>, 00 Civ. 4560, 98 Cr. 833, 2001 WL 253432 at *11 (S.D.N.Y. Mar. 15, 2001) (Peck, M.J.) (quoting <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. at 59, 106 S. Ct. at 370).[16/]

---

[14/]     (...continued)
on appeal." (citations omitted)); <u>Mayo</u> v. <u>Henderson</u>, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), <u>cert. denied</u>, 513 U.S. 820, 115 S. Ct. 81 (1994).

[15/]     <u>See</u>, <u>e.g.</u>, <u>Wright</u> v. <u>Van Patten</u>, 552 U.S. 120, 128 S. Ct. 743, 746 (2008); <u>United States</u> v. <u>Doe</u>, 537 F.3d 204, 213-14 (2d Cir. 2008); <u>United States</u> v. <u>Jennings</u>, 282 F. App'x 37, 38 (2d Cir. 2008); <u>United States</u> v. <u>Arteca</u>, 411 F.3d 315, 320 (2d Cir. 2005);  <u>United States</u> v. <u>Thomas</u>, 74 F. App'x 113, 115 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1019, 124 S. Ct. 2089 (2004).

[16/]     <u>Accord</u>, <u>e.g.</u>, <u>United States</u> v. <u>Gunn</u>, 419 F. App'x 106, 109 (2d Cir.), <u>cert. denied</u>, 132 S. Ct. 302 (2011); <u>United States</u> v. <u>Doe</u>, 537 F.3d at 214; <u>United States</u> v. <u>Arteca</u>, 411 F.3d at 320;
(continued...)

Moreover, in a case such as this where a petitioner has waived his right to collateral attack of his sentence, "[t]o raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary, because 'the advice he received from counsel was not within acceptable standards.'" Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (citations omitted), cert. denied, 555 U.S. 1197, 129 S. Ct. 1376 (2009).  A petitioner cannot avoid the waiver by "challenging [his] attorney's role in shaping [his] bargaining position," but rather must challenge his attorney's "advice about that bargaining position." Parisi v. United States, 529 F.3d at 138-39.

## II.  THE COURT NEED NOT HOLD AN EVIDENTIARY HEARING

A district court should not dismiss a § 2255 petition without conducting an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.  Section 2255, however, "does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 514 (1962).  Section 2255 provides that the "court may entertain and

---

16/      (...continued)
United States v. Garcia, 57 F. App'x 486, 489 (2d Cir.), cert. denied, 538 U.S. 992, 123 S. Ct. 1815 (2003); United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002); United States v. Coffin, 76 F.3d 494, 498 (2d Cir.), cert. denied, 517 U.S. 1147, 116 S. Ct. 1445 (1996); Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992); Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir.1992); Panuccio v. Kelly, 927 F.2d 106, 108 (2d Cir. 1991); Morton v. Perez, 13 Civ. 3985, 2014 WL 407411 at *9 (S.D.N.Y. Feb. 4, 2014), report & rec. adopted, 2014 WL 948186 (S.D.N.Y. Mar. 11, 2014); Hardy v. United States, 11 Civ. 8382, 10 Cr. 1123, 2012 WL 843384 at *9 (S.D.N.Y. Mar. 14, 2012) (Peck, M.J.); Eber-Schmid v. Cuomo, 09 Civ. 8036, 09 Civ. 8038, 2010 WL 1640905 at *18 (S.D.N.Y. Apr. 22, 2010) (Peck, M.J.); Lear v. Poole, 711 F. Supp. 2d 288, 298-99 (W.D.N.Y. 2010); Whitted v. United States, 07 Civ. 2174, 2009 WL 4906545 at * 2 (S.D.N.Y. Dec. 18, 2009); Heyward v. Costello, 91 Civ. 1570, 1994 WL 263426 at *3-4 (S.D.N.Y. June 13, 1994); People v. McDonald, 1 N.Y.3d 109, 115, 769 N.Y.S.2d 781, 785 (2003).

determine such motion without requiring the production of the prisoner at the hearing." 28 U.S.C.

§ 2255.  The Second Circuit has held that:

> It is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories. After expanding the record, the district court then decides if an evidentiary hearing also is required.  Our precedent disapproves of summary dismissal of petitions where factual issues exist[], but it permits a "middle road" of deciding disputed facts on the basis of written submissions.

Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (citations omitted); accord, e.g., United

States v. Howard, 443 F. App'x 596, 600 (2d Cir. 2011), cert. denied, 132 S. Ct. 1612 (2012); Raysor

v. United States, 647 F.3d 491, 494 (2d Cir. 2011); Campusano v. United States, 442 F.3d 770, 776

(2d Cir. 2006) ("As noted in Chang v. United States and Pham v. United States, the district court has

discretion to determine if a testimonial hearing will be conducted." (citations omitted)); Chang v.

United States, 250 F.3d 79, 85 (2d Cir. 2001) (Petitioner's "claim was not summarily dismissed by

the district court.  At the request of the court, the record was supplemented by a detailed affidavit

from trial counsel credibly describing the circumstances concerning [petitioner's § 2255 claim].  We

believe that with that submission the record was sufficient to support dismissal of the petition.").

 Because the Court in this case has at its disposal the necessary plea and sentencing

transcripts, the plea agreement, and Oldyn's counsel's sentencing and appellate submissions, an

evidentiary hearing is not necessary.

## III. OLDYN'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AS TO THE PLEA AGREEMENT IS MERITLESS

 Oldyn asserts that counsel was ineffective during the plea proceedings for failing "to

inform [Oldyn], or the court of the fact that [Oldyn] no longer faced a mandatory minimum of ten

years imprisonment."  (Dkt. No. 2: Oldyn § 2255 Br. at 7; see also Dkt. No. 1: Pet. ¶ 12(1); Dkt. No.

12: Oldyn § 2255 Reply Br.)  Oldyn claims that had counsel done so,  he would have "instructed counsel to submit a pre-trial motion requesting [that] the FSA be applied to his case" or alternatively "would have exercised his rights and proceeded to trial."  (Oldyn § 2255 Br. at 8.)  At its core, Oldyn's claim is grounded in the proposition that the FSA was applicable and that counsel had a duty to seek the application of the FSA's more lenient penalty provisions, and counsel's failure to do so rendered his appeal waiver unknowing and involuntary.  (See generally Oldyn § 2255 Br.)  To the extent this claim survives Oldyn's waiver of his right to collaterally attack his plea, Oldyn has failed to demonstrate ineffective assistance of counsel.

### A.      Counsel's Performance as to the Plea Agreement was Objectively Reasonable

Oldyn's assertions presuppose that the new FSA penalty provisions applied at the time of Oldyn's plea.  (See, e.g., Dkt. No. 12: Oldyn Reply Br. at 1 ("The gist of [Oldyn's] argument is that he was convicted after the new law (FSA) was enacted; and therefore, the new law applied to his case.").)  Although the President signed the FSA into law two days before Oldyn's plea hearing, Oldyn's conduct occurred before the FSA's effective date.  (See page 1 above.)  Absent a clear statement that a new law applies retroactively, it is the normal procedure to apply the law in effect at the time the conduct occurred.  See 1 U.S.C. § 109 ("The repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide . . . ."); see also United States v. Smith, 354 F.3d 171, 173 (2d Cir. 2003) (Sotomayor, C.J.) ("First, relevant Supreme Court and Second Circuit case law supports the Government's contention that it is the law at the time of the offense, . . . that governs.  Second, the federal 'saving statute' preserves the original penalties in effect when [defendant] committed the offense . . . ." (emphasis added)); United States v. Gardner, 837 F. Supp. 2d 346, 349-50 (S.D.N.Y. 2011) (Rakoff, D.J.) ("[A] defendant's liability is established by the statute in effect at the time he

committed the crime, and not at the time of sentencing, unless Congress expressly provides otherwise in repealing or amending a statute. . . . [T]he Court does not believe its decision in Patterson was in error.  The overwhelming majority of courts to have considered this issue agree that the FSA does not apply to defendants whose offense conduct occurred prior to the FSA's enactment, regardless of when their sentencing occurs." (emphasis added)); United States v. Tejeda, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) ("Likewise, the Court can find nothing in the FSA that alters the default rule that legislative repeal of a criminal penalty does not benefit those who incurred the penalty prior to its repeal, unless the repealing statute expressly provides for such relief.").[17]

In addition to being the default rule, it was the law of this Circuit that the FSA did not apply to defendants who were sentenced after August 3, 2010 for conduct committed before that date.  See United States v. Acoff, 634 F.3d 200, 202 (2d Cir.) (per curiam), cert. denied, 131 S. Ct. 3007 (2011), abrogated on other grounds by Dorsey v. United States, 132 S. Ct. 2321 (2012); see also district court cases cited immediately above.  Moreover, it is well settled in the Second Circuit that "[t]rial counsel cannot be faulted for failing to predict changes in the governing law." Anthony v. Sheahan, No. 13-CV-6198, 2014 WL 547168 at *10 (W.D.N.Y. Feb. 10, 2014).  Oldyn's counsel cannot be faulted for failing to anticipate the Supreme Court's subsequent Dorsey opinion changing

---

[17]     See also, e.g., Johnson v. United States, Civ. No. 12-1106, 2013 WL 3869931 at *2 (S.D. Ill. July 26, 2013) ("The FSA took effect on August 3, 2010.  [Defendant] was sentenced on October 18, 2010 for crimes committed prior to the effective date of the FSA.  At the time [defendant] was sentenced, the FSA was not applicable to anyone whose conduct occurred before its effective date, regardless of when the offender was sentenced.  Therefore, it was not an error for the Court not to sentence [defendant] under the more lenient penalties of the FSA, nor was his counsel ineffective for not objecting to or appealing the Court's decision." (citations omitted)).

the law.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) ("Counsel is not required to forecast

changes in the governing law."), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).[18]

Accordingly, because the pre-FSA penalties applied at the time of Oldyn's criminal

conduct (and therefore there was no change in the law for Oldyn to be informed of) and counsel

cannot be faulted for failing to foresee the Supreme Court's eventual holding in Dorsey (which was

the interpretation counsel advanced anyway), Oldyn's counsel's performance at the time of the plea

hearing was objectively reasonable.

**B.     In Any Event, Oldyn Cannot Demonstrate Prejudice**

In any event, Oldyn cannot show prejudice.  Oldyn argues that the FSA "lowered his

mandatory minimum from 120 to 60 months" because he plead guilty to conspiring to distribute only

50 grams of crack cocaine, which, post-FSA, carries only a five-year mandatory minimum.  (Oldyn

§ 2255 Br. at 9; see also page 4 above.)  However, Oldyn stipulated in the plea agreement to

possessing at least 500 grams, an amount which the Government alleges it would readily have

proven at trial.  (See page 2 above; see also Dkt. No. 9: Gov't Opp. Br. at 20.)  Oldyn stated at his

sentencing hearing that he understood that "the government would be able to prove [possession of]

more than 840 grams" of crack cocaine through co-conspirator liability and reasonable

foreseeability.  (10 Cr. 94, Dkt. No. 130: S. 3-4.)  Thus, both Oldyn's stipulated quantity and the

amount attributable to Oldyn through co-conspirator liability and reasonable foreseeability placed

---

[18]     See also, e.g., Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990) ("In effect, [defendant]
argues that his counsel should have realized that the Supreme Court was planning a
significant change in the existing law, and that the failure to anticipate this change rises to
the level of constitutional ineffectiveness.  We repeatedly have been unwilling to hold
attorneys to such a high standard."); Sanchez v. Lee, 10 Civ. 7719, 2011 WL 924859 at *32
& n.56 (S.D.N.Y. Mar. 16, 2011) (Peck, M.J.) ("The Sixth Amendment does not require
counsel to presage changes in the law." (collecting cases)), report & rec. adopted, 2011 WL
3477314 (S.D.N.Y. Aug. 8, 2011), aff'd, 508 F. App'x 46 (2d Cir. 2013).

Oldyn above the ten-year mandatory minimum quantity threshold pursuant to section 841(b)(1)(iii) both pre- and post-FSA. See, e.g., Samas v. United States, No. 12-cv-00151, 2014 WL 1653219 at *17 (D. Conn. April 23, 2014) ("[A]lthough the [FSA] raised the threshold amount required to trigger the ten year mandatory minimum of 18 U.S.C. § 841(b)(1)(iii) from 5 grams to 280 grams, Petitioner stipulated in his plea agreement to possessing 352 grams of cocaine base, and thus the mandatory minimum still applies."); Martin v. United States, 834 F. Supp. 2d 115, 139 (E.D.N.Y. 2011) ("Finally, even if the FSA were applied retroactively, it would be of no benefit to [petitioner]. He stipulated in his plea agreement that 'his sentence shall be calculated on a drug type and quantity of at least 1.5 kilograms of cocaine base,' which is clearly in excess of the increased 280-gram threshold quantity of cocaine base required for the 20-year mandatory minimum sentence to apply."), appeal dismissed, No. 12-732 (2d Cir. Aug. 15, 2012).[19/]

The same is true with respect to Oldyn's assertion that he would have "afford[ed] the jury the opportunity to determine whether he was responsible for the sale of 500 grams of crack, using the higher standard of proof of 'beyond a reasonable doubt'" had he known about the FSA's higher quantity thresholds. (Oldyn § 2255 Br. at 13.) Oldyn's claim is unconvincing. First, Oldyn's after-the-fact conclusory and conditional assertion "'suffers from obvious credibility problems.'" Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991) (quoting Hooper v. Garraghty, 845 F.2d 471,

---

[19/]   See also, e.g., United States v. Jackson, 335 F.3d 170, 181 (2d Cir. 2003) ("Under well-established law, [defendant] was responsible not only for the cocaine that he himself conspired to import but also for the cocaine his co-conspirators conspired to import, provided he knew of his co-conspirator's illicit activities or the activities were reasonably foreseeable by him."); United States v. Banuelos, 322 F.3d 700, 704 (9th Cir. 2003) (for sentencing purposes, co-conspirator liability allows the court to attribute to the defendant "the quantity of drugs that either (1) fell within the scope of the defendant's agreement with his coconspirators or (2) was reasonably foreseeable to the defendant").

475 (4th Cir.), cert. denied, 488 U.S. 843, 109 S. Ct. 117 (1988)).[20] Second, the objective evidence makes it clear that going to trial was not to Oldyn's advantage.  The plea agreement contained substantial concessions by the Government.  Had Oldyn gone to trial, he would have been subject to the firearm charge, which itself carries a consecutive ten-year mandatory minimum sentence, and the Government could have filed a prior felony information "in connection with [Oldyn's] convictions (1) . . . for criminal sale of a controlled substance . . . , and (2) . . . for attempted criminal sale of a controlled substance" (Ex. 2: Plea Agmt. at 1), which, even assuming that the Government could only prove enough to invoke the lesser five-year mandatory minimum sentence, in total would have increased Oldyn's sentencing exposure to a mandatory minimum sentence of twenty-five years (see Gov't Opp. Br. at 18).

Accordingly, Oldyn cannot show prejudice.  See, e.g., Nunez-Polanco v. United States, 13 Civ. 3263, 11 Cr. 522, --- F. Supp. 2d ----, 2014 WL 2111674 at *7 (S.D.N.Y. May 20, 2014) ("Petitioner's independent knowledge of the risks of trial therefore cuts against a finding of prejudice."); Morton v. Perez, 2014 WL 407411 at *9 ("[I]f [defendant] had gone to trial, [defendant] could have faced 25 years imprisonment on each of the robbery charges, seven years on the weapons possession charge, and four years on the bail jumping charge.  Also, all of these sentences could have been ordered to run consecutively.  Given the choice [defendant] faced, and the absence of any evidence in the record suggesting that he would have been acquitted, there is no basis on which to conclude that 'a decision to reject the plea bargain would have been rational under

---

[20]    See also, e.g., Grimes v. Lempke, No. 10-cv-68, 2014 WL 1028863 at *15 (N.D.N.Y. Mar. 14, 2014); Morton v. Perez, 13 Civ. 3985, 2014 WL 407411 at *9 (S.D.N.Y. Feb. 4, 2014) ("A conclusory and conditional statement [that the petitioner would have gone to trial], however, does not constitute the 'objective evidence' generally needed to establish prejudice." (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003))), report & rec. adopted, 2014 WL 948186 (S.D.N.Y. Mar. 11, 2014).

the circumstances.'" (quoting <u>Padilla</u> v. <u>Kentucky</u>, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485 (2010))).

**IV.    OLDYN'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AS TO HIS SENTENCING IS BARRED AND IN ANY EVENT IS MERITLESS**

    **A.    Oldyn's Sentencing Claim is Barred Because His Appeal Waiver was Knowing and Voluntary**

Because Oldyn's counsel was not ineffective during the plea proceedings (<u>see</u> Part III above), Oldyn's appeal waiver bars his sentencing claim if the waiver otherwise was knowing and voluntary.  <u>United States</u> v. <u>Monzon</u>, 359 F.3d 110, 116 (2d Cir. 2004) ("Where the record clearly demonstrates that the defendant's waiver of h[is] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable."); <u>see also</u> cases cited at pages 10-12 above.  A waiver is "knowing" if the "defendant fully understood the potential consequences of his waiver."  <u>United States</u> v. <u>Monzon</u>, 359 F.3d at 116 (internal quotations omitted); <u>see also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Coston</u>, 737 F.3d 235, 237 (2d Cir. 2013) (per curiam).  To determine whether a defendant understood the consequences of a waiver,

> the district court [is] entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below [the agreed upon range], and had been made no promises except those contained in the plea agreement.

<u>United States</u> v. <u>Hernandez</u>, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam).

The record here clearly demonstrates that Oldyn's appeal waiver was knowing and voluntary.  At the plea colloquy before Judge Rakoff, Oldyn acknowledged that he was satisfied with his representation by counsel, that he understood and discussed the agreement with counsel, and that he was aware he was giving up certain rights by pleading guilty.  (<u>See</u> pages 3-4 above.) Critically, Judge Rakoff read the portion of the plea agreement containing the appeal waiver

provision and specifically inquired whether Oldyn understood that he was agreeing to waive his right to challenge a sentence at or below 210 months, and Oldyn replied that he did.  (See page 3 above.)  Accordingly, Oldyn's appeal waiver was knowing and voluntary.  See, e.g., Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam) (valid waiver where defendant "signed the plea agreement," told the judge "that he had read and understood the plea agreement," and that defendant "did not claim, in his § 2255 motion, that he had not understood the waiver contained in his plea agreement"); Abramo v. United States, 12 Civ. 1803, 2014 WL 1171735 at *13 (S.D.N.Y. Mar. 21, 2014) (Rakoff, D.J. & Pitman, M.J.) ("The record clearly demonstrates that petitioner stated he understood the consequences of the plea agreement's appeal/2255 waiver provision and that he had voluntarily entered into the agreement.  During petitioner's plea allocution, petitioner acknowledged, under oath, that he had discussed the terms of the plea agreement with [counsel], and pursuant to those discussions, that he understood the terms.  Petitioner also expressed his satisfaction with counsel's representation of him.   Petitioner affirmed that he had not been threatened, induced or coerced into signing the plea agreement.  Most importantly, while conducting petitioner's plea allocution, Judge Rakoff clearly informed petitioner of the consequences of the appeal/2255 waiver provision in the plea agreement . . . .  On this basis, Judge Rakoff found that petitioner's plea was entered 'knowingly and voluntarily.'" (record citations omitted)); Jones v. United States, 12 Civ. 646, 10 Cr. 197, 2014 WL 657508 at *3-4 (S.D.N.Y. Feb. 19, 2014) ("During his plea allocution, the Petitioner expressly acknowledged that he understood the effect of the Plea Agreement.  The Petitioner also informed the Court that he signed the Plea Agreement freely and voluntarily.  The Petitioner was sentenced . . . within the Stipulated Guidelines Range to which the Petitioner agreed.  There is no reason why petitioner should not be held to his agreement not to appeal or collaterally attack his sentence.").

Accordingly, because Oldyn's appeal waiver was entered into knowingly and voluntarily, Oldyn's second claim challenging counsel's performance during sentencing is barred. See, e.g., Samas v. United States, No. 12-cv-00151, 2014 WL 1653219 at *7 (D. Conn. Apr. 23, 2014); Abramo v. United States, 2014 WL 1171735 at *10.[21/]

### B.     In Any Event, Oldyn's Ineffective Assistance Claim is Meritless

Oldyn alleges that counsel was ineffective during the sentencing proceedings because counsel "fail[ed] to investigate the applicable law." (Dkt. No. 2: Oldyn § 2255 Br. at 14.) Specifically, Oldyn faults counsel's joinder of co-defendant Patterson's motion because Patterson plead guilty prior to the FSA's enactment, whereas Oldyn plead guilty afterwards. (Oldyn § 2255 Br. at 15; Dkt. No. 12: Oldyn Reply Br. at 3-5.) Oldyn alleges that had counsel "read the applicable law," counsel properly would have sought to apply the FSA, the law in effect at the time of Oldyn's plea, rather than the retrospective application sought in Patterson's motion. (Oldyn § 2255 Br. at 15; see also Oldyn Reply Br. at 3-5.)

Oldyn's conclusion is a non sequitur. It would have made no difference if Oldyn's counsel had submitted a separate brief seeking application of the FSA's more lenient penalty provisions because, prior to the Supreme Court's ruling in Dorsey, the FSA was not applicable to defendants whose conduct occurred before August 3, 2010. (See Part III above.) Indeed, at the time

---

[21/]     Accord, e.g., Morales v. United States, 08 Civ. 3901, 05 Cr. 120, 2009 WL 3353064 at *5 (S.D.N.Y. Oct. 20, 2009) (Peck, M.J.); Antonucci v. United States, 08 Civ. 529, 04 Cr. 828, 2009 WL 185996 at *4 (S.D.N.Y. Jan. 26, 2009) ("With regard to the waiver provision's validity, the record unambiguously reveals that [defendant] fully understood its potential consequences and voluntarily gave his assent. If such a claim were permitted to circumvent the plain language of the waiver agreement, the waiver of appeal provision would be rendered meaningless, as would the Plea Agreement itself. Because the waiver was both knowing and voluntary, it effectively bars the claim [defendant] is attempting to advance." (fn. omitted)).

28

of Oldyn's sentencing, the Second Circuit had made clear in United States v. Acoff, 634 F.3d 200

(2d Cir.) (per curiam), cert. denied, 131 S. Ct. 3007 (2011), that the FSA did not apply to such

defendants.  See United States v. Acoff, 634 F.3d at 202.[22/]  Oldyn allocuted to committing the

alleged offenses from 2002 to 2010 (see pages 1, 4 above), a fact which Oldyn does not dispute, and

Judge Rakoff's order denying the defendants' motions specifically noted that "[t]he defendants in

this action engaged in criminal acts while those acts were subject to a mandatory minimum sentence

of ten years" (see page 5 above).  It was not until long after Oldyn's sentencing hearing that the

Supreme Court held that the FSA applies retroactively to defendants sentenced after August 3, 2010

(see cases cited at pages 8-10 above).[23/]

---

[22/]    It is of no moment that Acoff was sentenced prior to the FSA's enactment.  The Second
Circuit's analysis focused critically on when the criminal conduct occurred, not on when the
defendant was convicted or sentenced.  See id. ("'[B]ecause the FSA took effect . . . after [the
defendant] committed his crimes 1 U.S.C. § 109 bars the Act from affecting his
punishment.'" (emphasis added) (citing United States v. Diaz, 627 F.3d 930, 931 (2d Cir.
2010) (per curiam)); see also United States v. Acoff, 634 F.3d at 205 (Lynch, C.J.,
concurring) ("Congress has commanded that offenders who committed such offenses before
the effective date of the FSA but are to be sentenced after that date must be sentenced under
the harsh terms of the prior law." (emphasis added)).  Oldyn's persistent protestations that
counsel should have sought application of the FSA because he was convicted after the FSA
was enacted miss the mark.

[23/]    It also is worth noting that Judge Rakoff made clear at sentencing that his sentencing
decision was based on the particular facts of the case:

> THE COURT:           . . . I might add that frankly I don't see how [an argument over
> the base offense level] would affect my sentence either way
> under Section 3553(a).  I am just going to look at what the
> facts are and not particularly how they impact the guidelines
> calculation under one rubric or another rubric, whatever.
>
> So far as the guidelines calculation is concerned, I will
> go with the government's view but with the caution that it
> really means very little if anything in the calculation of the
> sentence itself.
>
> (continued...)

Significantly, Oldyn's assertion that counsel failed to argue in favor of the FSA's application is factually incorrect. In addition to joining Patterson's motion (see page 4 above), on February 15, 2011, Oldyn's counsel submitted a sentencing memorandum arguing that Oldyn's base offense level should be 32 instead of 34 because the stipulated quantity range of crack straddled the new post-FSA quantity ranges (see page 5 above). Oldyn's counsel also appealed Judge Rakoff's sentence and submitted an affirmation opposing the Government's motion to dismiss the appeal, arguing that Oldyn was eligible for sentencing under the FSA. (See page 7 above.) Oldyn's counsel's actions reflect a determined effort to have the FSA's more lenient penalty provision applied to Oldyn's case despite controlling caselaw to the contrary. See United States v. Acoff, 634 F.3d at 202; see also cases cited at page 9 n.4 above. The evidence simply does not support Oldyn's assertion that counsel "fail[ed] to investigate the applicable law." (See page 7 above.)

Accordingly, Oldyn's counsel's performance with respect to sentencing was reasonable and Oldyn suffered no prejudice as a result. See, e.g., United States v. Acoff, 634 F.3d at 202; United States v. Walton, No. 10-cr-78, 2014 WL 2004472 at *12 (E.D. Ky. May 15, 2014) (Petitioner's "indictment alleged that he committed the crimes to which he eventually pled guilty to have occurred from July 2006 through June 2010. It was not until after [petitioner's] sentencing hearing that the Supreme Court held that the [FSA] applies to defendants who are initially sentenced after the Act's enactment date. Accordingly, it was reasonable for trial counsel to choose not to

---

[23]/   (...continued)
(10 Cr. 94, Dkt. No. 130: S. 10.) Even if the post-FSA Guidelines revisions were applicable when Oldyn was sentenced, and counsel argued that they were, there is no evidence that it would have affected Judge Rakoff's sentence calculation. Cf. Abramo v. United States, 12 Civ. 1803, 2014 WL 1171735 at *14 (S.D.N.Y. Mar. 21, 2014) (Rakoff, D.J. & Pitman, M.J.).

argue [petitioner's] eligibility to the Act.  [Petitioner] has failed to establish deficient performance under <u>Strickland</u>." (citations omitted)).

## **CONCLUSION**

For the reasons set forth above, Oldyn's § 2255 petition for a writ of habeas corpus (Dkt. No. 1: Pet.) should be <u>DENIED</u> in its entirety.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.[24]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Rakoff (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Ingram</u> v. <u>Herrick</u>, 475 F. App'x 793, 793 (2d Cir. 2012); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984

---

[24]    If Oldyn requires copies of any of the cases reported only in Westlaw, he should request copies from respondent's counsel.  <u>See</u> <u>Lebron</u> v. <u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

31

F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992), <u>cert. denied</u>, 506

U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d

Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714

F.2d 234, 237-38 (2d Cir. 1983).


Dated:         New York, New York
               July 8, 2014


                              Respectfully submitted,


                              _____
                              **Andrew J. Peck**
                              United States Magistrate Judge


Copies to:          Tyrone Oldyn (Mail)
                    Ryan P. Poscablo, Esq. (ECF)
                    Judge Jed S. Rakoff